IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTAL SANDERS, | CIVIL DIVISION |
| Plaintiff, | Case No. |
| v. | |
| ENT ALLERGY SPECIALISTS OF WESTERN PA | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Kristal Sanders brings this action under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq.,* to redress violations of her right to be free from employment discrimination based upon her disability. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about June 11, 2019, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 553-2019-01643. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated December 13, 2019.

5. The plaintiff filed this complaint within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. **_The parties_**

6. The plaintiff Kristal Sanders is an adult individual who resides at 716 Verna Way, Ellwood City, Beaver County, PA 16117.

7. The defendant ENT Allergy Specialists of Western PA ("ENT Allergy" or "the company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant has a principal place of business located at 301 Ohio River Boulevard, Sewickley, Allegheny County, PA 15143.

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5).

D. **_Factual Background_**

10. The plaintiff was hired by ENT Allergy on February 25, 2019 as a Medical Assistant. Shortly after being hired, she was assigned the position of Medical Biller/Coder. She remained in that position until April 17, 2019 when her employment was terminated.

11. ENT Allergy is a health care facility that provides medical and surgical treatment of ear, nose and throat problems.

12. The plaintiff's duties included medical billing and coding, scheduling of testing and other data entry for four doctors.

13. The plaintiff has a disability as defined by the Americans with Disabilities Act ("ADA") and/or was perceived by the employer as having a disability. Specifically, she has trigeminal neuralgia, a neurological disorder that involves intense, stabbing, electric shock-like

2

pain throughout the face and lower jaw and Attention Deficit/Hyperactivity Disorder ("ADHD"), a brain disorder that is marked by an ongoing pattern of inattention and/or hyperactivity-impulsivity that interferes with functioning or development.

14. The plaintiff could perform the essential functions of her job either with no accommodations or with reasonable accommodations. As detailed below, the only accommodation the plaintiff required was to have someone provide adequate training for her job. Further, as detailed below, the company failed and refused to provide this reasonable accommodation despite repeated requests by the plaintiff.

15. Linda Chufe, office manager for all of ENT Allergy's locations, hired the plaintiff and, approximately two weeks after the plaintiff started, Chufe moved her into the medical billing/coding position. The plaintiff did not have any experience with the company's computer and other systems and needed training to be able to perform the tasks associated with her job. The plaintiff was given one day of "training", which consisted of her watching some videos and working on a database that had fictitious patient charts. However, no one provided her any direction regarding how to work with the computer system. Following that "crash course", the plaintiff was assigned to work on active patient charts and records, and, from time to time, co-employees would tell her what to do in a cursory fashion. The plaintiff was having difficulty with getting up to speed with the system because no one explained how it worked.

16. Towards the end of March 2019, the plaintiff realized that this method of training had not provided her with the skills she needed and she went to Chufe to discuss the situation. She told Chufe that her training was not going well and described her experience thus far. During that meeting, the plaintiff told Chufe that she has trigeminal neuralgia and that she needed someone to dedicate some time to show her how to perform the computer-related tasks.

Chufe did not seem to believe that the plaintiff had a disability – not as she understood the term, apparently – and said, "having a disability is like someone being in a wheelchair and they can't get through doors." The plaintiff told her that disability involves other conditions that are not just physical. Chufe wrote down "trigeminal neurolagia" and said that she was going to have to look that up to find out what it is. She said that maybe she could get a computer that talks – which missed the point; the plaintiff had no trouble reading the screen, she just didn't know yet how to maneuver through and correctly use the relevant software. A "talking computer" was not going to teach her how to use the software. She also told the plaintiff that she was going to advise the other doctors about the plaintiff's disability. Chufe concluded the meeting by telling the plaintiff that she should have told her about her disability prior to being hired and that "if I would have known about your 'situation', I wouldn't have hired you."

17. After this meeting, Chufe would always refer to the plaintiff's disability as her "situation".

18. After this meeting, the company's employees ceased making any meaningful efforts to provide the plaintiff with training.

19. The plaintiff was subjected to verbal and mental abuse and treated differently by management and co-workers on account of her disability. Some examples follow.

    (a) Danielle [last name unknown], the plaintiff's immediate supervisor at the Beaver office, repeatedly chastised the plaintiff for making errors as she did her work, but would not show her how to correct the errors. She just sat at her workstation, staring at the plaintiff and saying "You did this yesterday" or "I've shown you this". She would do this in the presence of other employees and patients, which made the plaintiff self-conscious and anxious.

    (b) Danielle refused to explain how the software was supposed to be used, instead barking out "left click this, right click this, hit enter" without explaining what the plaintiff was supposed to be doing. Danielle would only spend a minute or two standing over the plaintiff's shoulder, huffing

        and puffing when the plaintiff did not do something right and refusing to explain the medical and other terms with which the plaintiff had to get familiar.

(c)     Co-employees refused to assist the plaintiff when she would get backed up getting patients scheduled and, instead, would make comments about doctors having to wait for their patients. For example, on one occasion, the plaintiff asked a co-worker with help and the co-worker replied, "I can't help you, honey, just keep scheduling". Minutes later, the plaintiff overheard that co-worker ask another co-worker if she can help her with anything.

(d)     In order to try to teach herself, the plaintiff kept notes regarding the various computer tasks that she was attempting to learn. At one point, Mary [last name unknown], office manager for the Sewickley office, saw the plaintiff referring to her notes while she was working on the computer. Mary took the notes and crumpled them up telling the plaintiff that she was not allowed to use them.

(e)     On more than one occasion, Chufe threatened the plaintiff's job, telling her that the plaintiff "had one more shot" to get things right and that she was making too many errors because of her "situation". Chufe said this in the presence of other workers, which embarrassed and humiliated the plaintiff.

(f)     After the plaintiff was transferred to the Sewickley office in approximately early April, Mary told the plaintiff that she could only provide one day of training, otherwise, she would get in trouble.

(g)     Co-workers harassed the plaintiff, tapping their fingers in front of the plaintiff while she was doing data entry, indicating that it was taking to long for her to do so and making rude comments to and about the plaintiff. Another employee purposely burped in the plaintiff's face blaming it on her indigestion.

(h)     Another worker was hired the same day as the plaintiff and had received a set of scrubs to wear at work. The plaintiff asked why she wasn't given a set of scrubs yet. Chufe said that it was because of the plaintiff's "situation" and that she was going to hold off on ordering her scrubs for now.

20.     On April 17, 2019, the plaintiff was called into Chufe's office, along with Jill Fowler, another co-employee. Chufe told them both that their employment was being terminated because the doctors were not happy. The plaintiff asked Chufe the reason for her termination.

Chufe said that the reason was because of her "situation". The plaintiff was shocked and said, "you mean because of my disability?" Chufe said "yes". The plaintiff said "that is discrimination! I never missed work; I have been on time every day, you wouldn't give order scrubs for me! I have not been given proper training. This is like you telling me I am like being in a wheelchair and I can't get through the doors, Linda!" Chufe did not respond to this and demanded to know if the plaintiff had any patient information in her possession. The plaintiff emptied the content of her book bag onto Chufe's desk and Chufe began digging through the items in an attempt to see if the plaintiff had taken patient information. The plaintiff reiterated that this is discrimination. Chufe's response is "well, I guess I will see you in court, then."

21. The plaintiff's employment was terminated because of her disability. To the extent that the company's stated reason for the plaintiff's termination is because of job performance, this is a pretext. The company failed and refused to provide a reasonable accommodation – i.e., proper training – to allow her to perform the essential functions of her job. In fact, the company ceased all efforts to train the plaintiff after she disclosed her disability and asked for training.

**FIRST CAUSE OF ACTION**

22. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

23. The plaintiff has a disability and thus is protected against discrimination under the ADA.

24. The plaintiff was qualified for her position.

25. The plaintiff was able to perform her position with or without a reasonable accommodation.

26. Despite her qualifications, the plaintiff was terminated. The reasons given for her discharge were a pretext.

27. The defendant's discharge of the plaintiff was because of her disability, in violation of the ADA.

28. At all times relevant, the defendant knew of the plaintiff's disability and/or regarded the plaintiff to be a disabled individual.

29. The defendant's violation of the ADA was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of discrimination.

## SECOND CAUSE OF ACTION

30. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

31. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: January 21, 2020